**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the Matter of | : | Case No. 10-43881/JHW |
| Frederick Vanhook | : | **OPINION ON** |
| Debtor | : | **RECONSIDERATION** |

APPEARANCES:  Yakov and Darlene Vaysman
100 Cherry Drive
Egg Harbor Township, New Jersey  08234
Pro se

Lee D. Gottesman, Esq.
509 Main Street
P.O. Box 1508
Toms River, New Jersey  08754-1508
Counsel for Michael T. Wolf, Esq.

Thomas J. Subranni, Esq.
Subranni Zauber, LLC
1624 Pacific Avenue
P.O. Box 1913
Atlantic City, New Jersey  08404
Chapter 7 Trustee

**FILED**
JAMES J. WALDRON, CLERK

February 21 , 2012

U.S. BANKRUPTCY COURT
CAMDEN, NJ
BY:  s/ Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

   The debtor's state court divorce attorney moves here for reconsideration of this court's previous order directing him to turn over funds that he is holding in an attorney escrow account, on behalf of the debtor, to the parents of the debtor's estranged wife.  In response to this court's inquiry, the Chapter 7 trustee has indicated his intention to abandon the bankruptcy estate's interest in the funds in question.  For the reasons stated below, the August 16,

1

2011 order directing turnover will be vacated. The court has confirmed that the bankruptcy estate no longer holds an interest in the property at issue, and the court abstains from any further consideration of the proper disposition to be afforded to the escrowed funds. The parties are free to pursue their remedies in state court.

## **FACTS**

The debtor, Frederick Vanhook, filed an individual voluntary Chapter 7 bankruptcy petition on October 30, 2010. Among his unsecured creditors, the debtor scheduled a debt owed to Michael T. Wolf, Esq., his divorce counsel, for attorneys' fees in the amount of $3,007, and a debt owed to the debtor's in-laws, Yakov and Darlene Vaysman, in the amount of $12,691 for an unspecified purpose.[1] Thomas J. Subranni was appointed as the Chapter 7 trustee, and on December 20, 2010, he filed a Report of No Distribution. The debtor subsequently received his Chapter 7 discharge on July 22, 2011.

One week earlier, on July 14, 2011, the Vaysmans moved pro se before this court to compel the debtor to release certain funds held in escrow to them. The movants claimed that the debtor's divorce counsel, Michael Wolf, was

---

[1] The debtor amended Schedule F on December 8, 2010 to add the Vaysman debt.

holding $12,634 in an attorney escrow account that reflected the amount of a prepetition promissory note owed to them. They asserted that the funds have been available for release for over a year, that this money is not property of the debtor's bankruptcy estate, and that it should be released to them. The Vaysmans attached a copy of a promissory note (hereinafter "Note #1"), in which Frederick Vanhook promised to pay to Yakov Vaysman $12,634 from his "law suit settlement funds" to reimburse Mr. Vaysman for money that the debtor had borrowed to cover various household related expenses as delineated in the note.[2] Note #1 expressly authorized the debtor's personal injury counsel, Mr. M. Russo, "to issue a check [in the] amount [of] $12,634.00 made out to Yakov Vaysman from my settlement funds." Note #1 was signed and dated March 16, 2009, and notarized by the debtor's personal injury counsel, Michael Russo.[3]

The Vaysmans also included a copy of a second promissory note (hereinafter "Note #2"), in which the debtor promised to pay Mr. and Mrs. Vaysman an estimated $1,900 for child care services from his law suit

---

[2] See also Motion for Reconsid., Exh. A.

[3] The note was executed one week after Marsha Vanhook filed a complaint for divorce in the New Jersey Superior Court for Atlantic County, Chancery Division, Family Part on March 9, 2009.

settlement fund.[4]  Note #2 states that the Vaysmans would contact Mr. Russo to provide the exact amount of the child care services debt and that Mr. Russo was authorized "to issue a check on [sic] that amount made out to Yakov Vaysman from my settlement funds."  Note #2 was signed and dated August 14, 2009.

The debtor's personal injury action was resolved, resulting in a payment to the debtor on or about October 28, 2009.[5]  At about that same time, Mr. Vaysman apparently initiated a string of email correspondence with Mr. Russo, the debtor's personal injury counsel, seeking to have the two promissory notes paid.[6]  Mr. Vaysman asserted that the debtor now owed $3,900 in child care services.  Approximately seven months later, in May 2010, he revised that amount, raising it to $7,200.  Mr. and Mrs. Vanhook were involved in a

---

[4]     See also Motion for Reconsid., Exh. B.

[5]     The Vaysmans attached a copy of what purports to be a Closing Statement regarding a civil action, presumably the personal injury suit, between the debtor and Long Island Rail Road Company, et al, in the Supreme Court of Kings County, New York.  The matter was apparently resolved between the parties, resulting in a payment from the New Hampshire Insurance Co. on October 28, 2009 in the amount of $172,500.  The debtor's share after associated fees and costs is represented to be approximately $93,000.

[6]     See also Motion for Reconsid., Exh. D.  We make no ruling here on the evidentiary weight to be afforded the printouts of the purported email messages.  We note that both parties have provided identical copies of the emails in question and that no one disputes their authenticity.  We refer to them herein solely to aid in establishing the factual sequence of events.

4

contentious divorce proceeding during that time.  Mr. Vanhook apparently moved to compel Mrs. Vanhook to pay half of an expert witness retainer fee, $4,500, to a Dr. Ronald Gruen.  Mrs. Vanhook asserted that she was financially unable to afford her share of the retainer.  The matter came before the Hon. Patricia M. Wild, J.S.C., who issued an order on May 28, 2010, noting that Michael Russo, Esq. was "the escrow agent for the $20,000 in Defendant's worker compensation settlement funds," and directing that $7,200 be released to the Vaysmans and $4,500 be paid to Dr. Ronald Gruen.[7]  The court ordered further that "[t]he remaining $12,634 in this account will abide the action in the special civil part or joinder in the matrimonial action."[8]

Mr. Vaysman promptly emailed Mr. Russo on May 28, 2010, asserting that the state court had directed the turnover of $7,200 "related to the child care expenses," attaching a copy of the state court order, and explaining that he had commenced a separate action to recover on Note #1, now estimated to be due in the amount of $13,847.54 ($12,634 principal + interest, court fees

---

[7]     See Motion for Reconsid., Exh. C.

[8]     Id. at ¶ (3).  This mathematical calculation appears to be incorrect. It is noted that $20,000, the stated beginning balance, minus $7,200 to the Vaysmans and $4,500 to Dr. Gruen would result in a remaining balance of $8,300, rather than the $12,634 reflected in the order.

5

and other expenses).[9]  On June 2, 2010, Mr. Russo responded to Mr. Vaysman by email, stating that he was forwarding a check to Mr. Vaysman in the amount of $7,200, pursuant to the court order, and that he was forwarding a check in the amount of $4,500 to debtor's counsel, presumably Mr. Wolf, "for payment of some doctor's expense."[10]  Mr. Russo objected to being treated as an "escrow agent" in the matter and informed Mr. Vaysman that he was forwarding the remaining monies to the debtor's attorney's escrow account and that he did "not wish to have any further involvement in this matter."[11]  He added at the end of his message, that:  "Additionally, the Court Order is wrong on its face as to the remaining amounts."[12]  Mr. Russo followed up with a letter to Mr. Wolf, also dated June 2, 2010, enclosing a check for $8,300, representing the remaining funds in the debtor's personal injury settlement account.  In his letter, he explained:

> the Court order is wrong on its face since the remaining amount of monies held in the escrow account was $20,000.00 and $7,200.00 has been paid to the Vaysman's for child care services and $4,500.00 was sent directly to you payable to Dr. Gruen, for some doctor expense, leaving $8,300.00 which I am now distributing to

---

[9]    This action was apparently stayed by the debtor's bankruptcy filing and allegedly dismissed.  See Original Motion Papers.

[10]    Motion for Reconsid., Exh. E.

[11]    Id.

[12]    Id.

6

>   your trust account.  The Court order incorrectly lists . . . the
>   amount remaining [as] over $12,000.00.[13]

Approximately six months, later Mr. Vanhook filed for bankruptcy protection in this court.

    The Vaysmans' motion for turnover was heard before this court on August 16, 2011.  At that time, the Vaysmans appeared pro se, with their daughter Marsha Vanhook, the debtor's estranged wife, in support of the motion.  Mrs. Vanhook stated that the motion was part of "a bitter divorce" and that the money sought by the Vaysmans "has been [held] in a trust fund for [her] parents for close to two years now and [Mr. Vanhook's] matrimonial attorney is just holding it up."  Neither Mr. Vanhook nor his attorney, Mr. Wolf, appeared at this hearing.  It is acknowledged that Mr. Wolf was never served with a copy of the motion.  The court was informed at that time that the Chapter 7 trustee would not be taking a position on the motion and he did not appear.  The Vaysmans' uncontested motion for turnover was granted and an order was entered to that effect on the same day.

    On August 23, 2011, Mrs. Vaysman hand delivered the turnover order to Mr. Wolf and requested the release of the monies being held.  Mr. Wolf refused

---

[13]    Motion for Reconsid., Exh. E.

7

to release the funds because he disputed the amount of funds that he was supposedly holding on behalf of the debtor.

On August 25, 2011, Mr. Wolf moved for reconsideration of the August 16, 2011 order requiring the turnover of the escrowed funds in the amount of $12,634 to the Vaysmans. Mr. Wolf asserted that the Vaysmans held at best an unsecured claim against the debtor, which was subject to the debtor's Chapter 7 discharge. He maintained that the Vaysmans have not provided proof of a security interest in the contested funds or properly perfected a state court judgment lien against the debtor. Moreover, he pointed out that they have not, as of yet, sought a determination of nondischargeability before this court. Alternatively, Mr. Wolf opined that the funds in question were eligible for exemption by the debtor pursuant to 11 U.S.C. § 522(d)(11)(D), or in the absence of such relief, that the monies should be turned over to the Chapter 7 trustee. He suggested as well that the $7,200 previously paid to the Vaysmans was recoverable by the trustee as a preferential payment to an insider.

In response, Mrs. Vanhook's divorce attorney, Frank H. Rose, Esq., filed a letter, at the request of the Vaysmans, in an attempt to "clarify" the state court proceedings and the proper amount that he believes should be in Mr. Wolf's escrow account. Mr. Rose acknowledged that at one point, the amount of funds held in escrow would have decreased from $20,000 to $8,300 ($20,000

8

- $7,200 - $4,500 = $8,300), but he claimed that Dr. Gruen was later directed to disgorge all but $1,000 of his initial $9,000 retainer and that between $3,500 and $4,500 should have been deposited back into the escrow account.[14]  This would mean that between $11,800 and $12,800 should now be held in escrow.  Mr. Rose also believed that the child care expenses asserted as due by the Vaysmans should be in the neighborhood of approximately $5,000, assuming the parties continued to abide by the $200 a week rate listed in Note #2.[15]

The motion for reconsideration was heard in court on September 19, 2011.  At the outset, this court determined that it was appropriate to require notice of the original motion for turnover to have been served on Mr. Wolf.  Because notice was not afforded at that time, the court agreed to reconsider the Vaysmans' motion for turnover.  To clarify the status of the escrowed funds in the bankruptcy context, the court directed that the Chapter 7 trustee provide a written response addressing the estate's interest in the funds in question.  In the event that the trustee had no interest in recovering the funds

---

[14]   The amount to be deposited would depend upon the allocation of the $1,000 payment to Dr. Gruen between Mr. and Mrs. Vanhook and whether any amount had been refunded directly back to Mr. Vanhook.

[15]   In addition, Mr. Rose believes that the state court ordered payment of $7,200 should be applied toward the obligation under the first promissory note, rather than as discussed by Judge Wild, in satisfaction of the second promissory note.

9

for the benefit of the estate, the court stated that it would release any bankruptcy claims to the escrow and redirect the matter to the state court. October 11, 2011 was set as a control date with no appearances required if a written submission was received from the Chapter 7 trustee prior to the scheduled hearing date.

In a letter dated September 26, 2011, Mr. Subranni stated that in light of "the personal injury nature of the trust funds, the complex and competing issues in the matrimonial court, and anticipated substantial administrative expenses that would be necessary to sort out the rights and liabilities of the various parties," the trustee was abandoning any interest of the bankruptcy estate in the escrowed funds. In response, the Vaysmans and Marsha Vanhook each filed letters opposing resolution of the matter in the New Jersey Superior Court and asking that this court resolve the matter.

On October 11, 2011, the Vaysmans and Mrs. Vanhook returned to court. Neither Mr. Gottesman, Mr. Wolf, nor the Chapter 7 trustee appeared. The court questioned whether the language in the promissory note was enforceable, perhaps as an assignment, and determined to resolve the matter

10

by written opinion.[16] Upon more extensive review, I have determined to abstain from resolving the remaining dispute between the parties, leaving the parties to pursue their remedies in state court.

## DISCUSSION

At the hearing on September 19, 2011, it was determined that if the Chapter 7 trustee abandoned any interest that the bankruptcy estate might hold in the underlying funds at issue, resolution of the matter would be redirected to the New Jersey Superior Court. The trustee has since indicated his intention to abandon any interest in the escrowed funds, although no formal action has been taken to effect the abandonment.

A.  Abandonment.

In the normal course, property of the estate may be abandoned in one of three ways: (1) by the trustee, after notice and a hearing, where it is burdensome or "of inconsequential value and benefit to the estate"; (2) by the court, on the request of a party in interest and after notice and a hearing; or (3)

---

[16] The court mistakenly believed at that time that the debtor had claimed an exemption in these funds; however, there is no indication in the record that the debtor was claiming an exemption.

automatically upon the closing of the case if the property was scheduled but not administered by the trustee. 11 U.S.C. § 554 (a-c). In this case, there has been no "formal" abandonment by the trustee, no request by a party in interest, or any notice or an opportunity for a hearing. Moreover, the property in question was never scheduled. Nevertheless, where the Bankruptcy Code provides for the raising of an issue by a party in interest, the court is authorized under 11 U.S.C. § 105(a) to "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of the process." On this record, in light of the trustee's letter dated September 26, 2011 unequivocally stating his intention "to abandon any interest the Debtor Estate may have in the funds," issued in response to this court's inquiry, I will hold that the escrowed funds in question shall be deemed abandoned and no longer constitute property of the debtor's estate. 11 U.S.C. § 554(d). See In re Henderson, 245 B.R. 449, 454 (Bankr. S.D.N.Y. 2000) (if the property is not scheduled or abandoned in the normal course, "the court can order a different result"). No further notice need be provided or a hearing scheduled. See Fed.R.Bankr.P. 6007(a) ("Unless otherwise directed by the court, the trustee . . . shall provide notice").

As abandoned property, the property vests in the debtor. Morlan v. Universal Guar. Life Ins. Co., 298 F.3d at 617 (property reverts to the debtor "nunc pro tunc"); In re Dewsnup, 908 F.2d 588, 590 (10th Cir. 1990), aff'd, 502

U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992) ("Following abandonment, 'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.'"). The Vaysmans are free to pursue their claims against those funds, premised on the argument that the language in the promissory notes accomplished a prepetition transfer of the debtor's interest in those funds, by way of assignment or otherwise. The question of an assignment or a security interest in property that is no longer property of the bankruptcy estate, governed as it is by state law, is best left for resolution through the state court process. Abstention is appropriate in this matter, which would permit the parties to resume their quest for relief before the appropriate state court forum.[17]

B.  Abstention.

Permissive or discretionary abstention may be raised either by the court sua sponte or by motion of a party. Bricker v. Martin, 265 Fed.Appx. 141 (3d Cir. 2008); In re Gober, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996). This doctrine allows a court to abstain from hearing a particular matter arising under title 11 or arising in or related to a case under title 11, in the interest of

---

[17]   It should be noted that if the state court determines that the Vaymans do not hold a valid assignment or security interest in the escrowed funds, then their claim is an unsecured claim that has been discharged in the debtor's bankruptcy case. See 11 U.S.C. § 524.

13

justice or in the interest of comity with state courts or respect for state law.[18] 28 U.S.C. § 1334(c)(1). Various factors have been developed to assist courts in determining when or whether to exercise their discretionary abstention power. Some courts rely upon a twelve factor test, while others utilize a seven factor test. See Shalom Torah Centers v. Philadelphia Indem. Ins. Cos., No. 10–6766 (FLW), 2011 WL 1322295, *4 (D.N.J. Mar. 31, 2011) (recognizing both approaches and noting that the "two sets of factors are substantially similar"). The twelve factor test focuses on:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
>
> (2) the extent to which state law issues predominate over bankruptcy issues,
>
> (3) the difficulty or unsettled nature of the applicable state law,
>
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court,
>
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
>
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
>
> (7) the substance rather than form of an asserted "core" proceeding,

---

[18] In contrast, mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2), requires a timely motion by a party and may not be raised sua sponte by the court. Vision Bank v. Platinum Invs., L.L.C., No. 11–00093–KD–B, 2011 WL 2144547, *3 (S.D.Ala. May 11, 2011); Whitney Lane Holdings, LLC v. Don Realty, LLC, No. 08-cv-775, 2010 WL 1257879, *4 (N.D.N.Y. Mar. 26, 2010) ("In other words, mandatory abstention may not be raised by the court sua sponte at any time."). No such motion has been brought before the court.

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden of [the court's] docket,

(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of non-debtor parties.

Id. at *4 n.6 (citing to In re Earned Capital Corp., 331 B.R. 208, 220 (Bankr. W.D.Pa. 2005)).  See also In re Direct Response Media, Inc., No. 10–10058, 2012 WL 112503, *23 (Bankr. D.Del. Jan. 12, 2012); In re Lacey, No. 10–19903–JNF, 2011 WL 5117767, *9 (Bankr. D.Mass. Oct. 27, 2011).  The result is a balancing test in which each of the relevant factors is weighed and analyzed on a case-by-case base, since not all of the factors may be relevant or present in a given case.  The factors should be applied "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative."  In re Earned Capital Corp., 331 B.R. 208, 221 (Bankr. W.D.Pa. 2005) (quoting In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993)).

In this case, the majority of the factors weigh in favor of abstention.  The court's decision to abstain in this matter would have no impact on the

15

administration of the bankruptcy estate. The debtor's case is a no-asset Chapter 7 proceeding, and he has already received his discharge. There was no distribution to creditors and all unsecured claims have been discharged. In the event that the state court determines that the Vaysmans hold only an unsecured claim, their claim will also be discharged.[19] Alternatively, if the state court determines that the Vaysmans hold a secured claim or an absolute assignment of the funds, or otherwise, the Vaysmans will have recourse only to the escrowed funds in question. The debtor did not choose to exempt those funds, the Chapter 7 trustee expressed no interest, and this court has determined that those monies have been abandoned. The bankruptcy estate no longer asserts any interest in these funds. The automatic stay is no longer in effect. See 11 U.S.C. § 362(c).

The extent to which state law issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, a jurisdictional basis, other than 28 U.S.C. § 1334, and the presence of non-debtor parties in the proceeding, also all weigh in favor of abstention. The determination of property rights in the debtor's assets is a question of state law. Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 51,

---

[19] As noted earlier, the Vaysmans have not sought a determination of nondischargeability and characterization of their claim as a "domestic support obligation" is unlikely.

16

128 S. Ct. 2326, 2339, 171 L.Ed.2d 203 (2008); Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co., 549 U.S. 443, 450-51, 127 S. Ct. 1199, 1205 (2007) ("we have long recognized that the '"basic federal rule" in bankruptcy is that state law governs the substance of claims, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law."'")(citations omitted); Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955, 147 L.Ed.2d 13 (2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."). As noted earlier, there is a pending divorce action before the state court in which the underlying orders regarding this matter were first entered. The parties contesting this matter, the Vaysmans and Mr. Wolf, are all non-debtors. [20] Jurisdiction in this matter exists, if at all, pursuant to 28 U.S.C. § 1334(b). In addition, the matter is only remotely connected to the debtor's bankruptcy case where the trustee and the debtor have asserted no interest in the property, the property has been abandoned and the debtor has received his discharge. The resolution of the dispute does not involve allowance of a claim, and no longer involves turnover or potential liquidation of property of the estate. See 28 U.S.C. § 157(b)(2)(B), (E) and (O).

---

[20]   Mrs. Vanhook has appeared on behalf of her parents, the Vaysmans, but she is not a party to the motion. It is noted that she did file an individual voluntary Chapter 7 proceeding on October 5, 2011, case number 11-39191/JHW. Her status as a debtor in her own proceeding has no bearing here.

While Mrs. Vanhook asserts that Mr. Wolf is forum shopping, it should be noted that Mr. Wolf was not the party who initially chose to bring this matter before the bankruptcy court.

In sum, the court has confirmed that the bankruptcy estate no longer holds an interest in the property at issue, and that the property has been abandoned. This court must exercise its discretionary authority to abstain from deciding the issues regarding the final disposition of the funds held in escrow by Mr. Wolf. The parties are free to pursue their interests before the appropriate state court forum. Counsel for Mr. Wolf shall submit an order in conformance with this opinion.

Dated:   February    , 2012

                                                JUDITH H. WIZMUR
                                                CHIEF JUDGE
                                                U.S. BANKRUPTCY COURT